ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **MYRIAM MILAGROS RODRÍGUEZ ROSARIO** DEMANDANTE(S)-RECURRIDA(S) <br><br> **V.** <br><br> **MAGDA MONTIJO RUIZ, SU ESPOSO "JOHN DOE" Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; BANCO POPULAR DE PUERTO RICO Y/O POPULAR MORTGAGE Y/O PERSONAL ADMINISTRATIVO X, Y, Z Y/O ASEGURADORAS X, Y, Z; DEPARTAMENTO DE LA VIVIENDA Y AGENCIAS RELACIONADAS** DEMANDADA(S) <br><br> **BANCO POPULAR DE PUERTO RICO** CO-DEMANDADA-PETICIONARIA(S) | **KLCE202301360** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN** <br><br> Caso Núm. **BY2019CV05438** (505) <br><br> Sobre: Solicitud de Titularidad y Novación de Contrato de Hipoteca |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### R E S O L U C I Ó N

En San Juan, Puerto Rico, hoy día 30 de abril de 2025.

Comparece ante este Tribunal de Apelaciones, el **BANCO POPULAR DE PUERTO RICO** (**BPPR**) mediante una *Petición de Certiorari* instada el 4 de diciembre de 2023. En su recurso, nos solicita que revisemos la *Resolución y Orden* emitida el 5 de octubre de 2023 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[1] Mediante la alusiva determinación, el foro

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 5 de octubre de 2023. Apéndice de la *Petición de Certiorari*, págs. 529- 555.

Número Identificador: RES2025_____

*a quo* denegó la *Reacción en Torno a "Moción Dispositiva" y Solicitud de Remedios* presentada el 16 de febrero de 2021 por el **BPPR**.[2]

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 17 de septiembre de 2019, la señora MYRIAM MILAGROS RODRÍGUEZ ROSARIO (señora RODRÍGUEZ ROSARIO) entabló una *Demanda* sobre solicitud de titularidad y novación del contrato de hipoteca.[3] Esgrimió que era dueña de una estructura sita en el Barrio Sabana Hoyos, Sector Vietnam, en el pueblo de Vega Alta. Explicó que el 30 de abril de 1976, adquirió la propiedad en conjunto con el señor JUAN RIVERA MARRERO (señor RIVERA MARRERO) mientras se encontraban casados. Indicó que luego, el 6 de abril de 1984, el vínculo matrimonial quedó disuelto mediante *Sentencia* que, entre otras cosas, dispuso sobre la división de los bienes gananciales acorde con la *Estipulación* en la cual el señor RIVERA MARRERO le cedió su participación.

La señora RODRÍGUEZ ROSARIO manifestó que al momento en que adquirió el inmueble, el mismo enclavaba en un terreno que pertenecía al DEPARTAMENTO DE LA VIVIENDA (VIVIENDA). Alegó que posteriormente, VIVIENDA llevó a cabo el proceso de planificación, zonificación, adjudicación y concesión de títulos creando la parcela número 40, "con la situación de que habían dos (2) estructuras con diferentes dueño."[4] Enunció que una de esas estructuras era la suya, mientras la otra pertenecía a los señores MAGDA MONTIJO RUIZ (señora MONTIJO RUIZ) y LUIS OQUENDO GARCÍA (señor OQUENDO GARCÍA), quienes estaban casados. Añadió que, en ese momento, las propiedades estaban "perfectamente delimitadas en sus colindancias."[5]

Con el propósito de obtener la titularidad de su predio, la señora RODRÍGUEZ ROSARIO manifestó que había llevado a cabo varias gestiones ante

---

[2] El mencionado escrito contenía una petición de desestimación de la *Demanda*.
[3] Apéndice de la *Petición de Certiorari*, págs. 1- 16.
[4] *Íd.*, pág. 2.
[5] *Íd.*

VIVIENDA, y le concedió nombrar su estructura como "40-A", sin llevar a cabo una segregación.

Adicionalmente, sostuvo que, requirió la preparación de un plano de mensura que fue realizado por el Agrimensor Enrique Reyes Torres. Indicó que del referido plano surgía que su predio tenía una cabida de 343.0750 metros cuadrados, equivalentes a 0.0873 cuerdas de terreno. Agregó que advino en conocimiento de que la señora MONTIJO RUIZ y su hermano, el señor JOSÉ GABRIEL MONTIJO RUIZ (señor MONTIJO RUIZ), habían obtenido un préstamo hipotecario que gravaba la parcela número 40, y consecuentemente, su estructura y terreno. Al respecto, alegó que BPPR – entidad acreedora del préstamo hipotecario– había incurrido en negligencia crasa.

El 25 de noviembre de 2019, los señores MONTIJO RUIZ y OQUENDO GARCÍA, así como la SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA ENTRE AMBOS (SLG OQUENDO-MONTIJO) presentaron su *Contestación a la Demanda* conteniendo una *Reconvención*, esta última en contra del BPPR, POPULAR MORTGAGE y VIVIENDA.[6] En esencia, negaron que el préstamo hipotecario obtenido gravara la estructura y terreno perteneciente a la señora RODRÍGUEZ ROSARIO. Especificaron que, de una lectura del asiento registral de su finca, no se desprendía gravamen alguno que afectara la propiedad de la señora RODRÍGUEZ ROSARIO. Sustentaron que el predio fue adquirido de manera privativa por la señora MONTIJO RUIZ, por lo que la SLG OQUENDO-MONTIJO no era responsable de controversia alguna.

Argumentaron, además, que la aparente causa de acción iba dirigida a BPPR y a VIVIENDA debido a que ellos no tenían "standing" para conceder los remedios solicitados. Asimismo, expresaron que, si se probaba en su día el reclamo inicial, sería el BPPR el único responsable.

---

[6] Apéndice de la *Petición de Certiorari*, págs. 17- 21.

Después, el 22 de enero de 2020, las señoras **RODRÍGUEZ ROSARIO** y **MONTIJO RUIZ** presentaron *Moción Informativa Conjunta en Solicitud de Desestimación a Parte Co-Demandada y Sometiéndose a la Jurisdicción de este Tribunal* mediante la cual, entre otras cosas, informaron haber llegado a un acuerdo para que se desestimara la reclamación contra el señor **OQUENDO GARCÍA** y la **SLG OQUENDO-MONTIJO**.[7] A consecuencia, el 20 de marzo de 2020, se dictaminó *Sentencia Parcial* decretando el archivo, con perjuicio, de la reclamación contra estos.[8]

Tras varios trámites procesales, el 23 de abril de 2020, el **BPPR** presentó su *Contestación a Demanda y Defensas Afirmativas*.[9] Reconoció que la señora **MONTIJO RUIZ** y su hermano, el señor MONTIJO RUIZ mantenían un préstamo hipotecario con **BPPR**, garantizado por la Finca Número 5,204 de Vega Alta, ubicada en la parcela número 40 en la Comunidad Sabana Hoyos Vega Alta, Puerto Rico.[10] No obstante, replicó que la *Demanda* no sostenía una reclamación que justificara la concesión de un remedio, y no tenía responsabilidad para con la señora **RODRÍGUEZ ROSARIO**. En lo específico, refutó que no intervino de manera alguna en la zonificación, segregación, linderos, cabidas y demás de las propiedades en garantía. Inclusive, expresó que no intercedió en la compraventa del inmueble. Admitió que contrataba a profesionales independientes para llevar a cabo tasaciones, "plot plans" y estudios de títulos de los inmuebles que garantizan los préstamos hipotecarios.

Ese mismo día, **BPPR** presentó una *Contestación a "Reconvención" de la Parte Codemandada*.[11] El 5 de mayo de 2020, la señora **MONTIJO RUIZ** presentó *Moción Informativa y Desistimiento* en la cual desistió, sin perjuicio,

---

[7] Apéndice de la *Petición de Certiorari*, págs. 28- 29.
[8] Esta determinación judicial fue notificada y archivada en autos el 8 de abril de 2020. Apéndice de la *Petición de Certiorari*, págs. 32- 33.
[9] *Íd.*, págs. 47- 54.
[10] El préstamo hipotecario fue originado el 19 de diciembre de 1995 por el **extinto** Levitt Mortgage Corp. por la suma de $58,790.00. Apéndice de la *Petición de Certiorari*, págs. 337- 339 y 349- 371.
[11] *Íd.*, págs. 55- 58.

de su reconvención en contra del **BPPR**.[12] Así las cosas, el 7 de mayo de 2020, mediante *Sentencia Parcial* se determinó ha lugar dicho desistimiento y ordenó el archivo de la *Reconvención*, con perjuicio.[13]

El 26 de mayo de 2020, el ESTADO LIBRE ASOCIADO DE PUERTO RICO (**ELA**), por sí y en representación de **VIVIENDA**, sin someterse a la jurisdicción, presentó *Comparecencia Especial: Moción de Desestimación, y para que se Deje Sin Efecto la Anotación de Rebeldía* reclamando la desestimación de la *Demanda* en contra de **VIVIENDA**.[14] A grandes rasgos, abogó que, aunque el emplazamiento fue diligenciado a **VIVIENDA**, esta no tenía capacidad para demandar ni ser demandada. Contendió que el emplazamiento debía realizarse al **ELA**, por conducto de la Secretaria de Justicia, y debía ser diligenciado dentro del término jurisdiccional de ciento veinte (120) días.

Más tarde, el 15 de junio de 2020, la señora **RODRÍGUEZ ROSARIO** presentó *Moción en Solicitud de Remedios y en Reacción a Comparecencia Especial del Departamento de la Vivienda*.[15] Expuso que no refutaba el hecho de que no se había emplazado al **ELA**, pero, en tanto **VIVIENDA** era una parte indispensable en el pleito, pidió autorización para emplazar adecuadamente al **ELA**. El 17 de junio de 2020, el **ELA** presentó su *Réplica a "Moción en Solicitud de Remedios y en Reacción a Comparecencia Especial del Departamento de la Vivienda"*, sin someterse a la jurisdicción, reiterando su petitorio de desestimación.[16]

Al día siguiente, el 18 de junio de 2020, el **BPPR** presentó *Moción Uniéndonos a "Réplica" Presentada por Codemandado y Solicitud de Desestimación*.[17] Se unió a los argumentos y fundamentos esbozados por el **ELA** en su moción dispositiva. Razonó que de las alegaciones de la *Demanda* se desprendía claramente que **VIVIENDA** era una parte indispensable sin la

---

[12] *Íd.,* págs. 62- 84.
[13] Fue notificado y archivado en autos el 8 de mayo de 2020. Apéndice de la *Petición de Certiorari*, págs. 96- 97.
[14] Apéndice de la *Petición de Certiorari*, págs. 123- 127.
[15] *Íd.*, págs. 135- 136.
[16] *Íd.*, págs. 137- 139.
[17] *Íd.*, págs. 140- 143.

cual no se podía adjudicar la controversia. En ese sentido, requirió la desestimación total del pleito. El 19 de junio de 2020, se pronunció *Sentencia Parcial* declarando ha lugar la solicitud de desestimación contra el **ELA** y, como consecuencia, desestimando, sin perjuicio, la *Demanda* en su contra por falta de jurisdicción.[18] Incontinenti, el 22 de junio de 2020, se expidió *Orden* concediendo plazo a la señora **RODRÍGUEZ ROSARIO** para exponer las razones por las cuales, si alguna, no se debía desestimar en su totalidad por falta de parte indispensable según interpelado por el **BPPR**.[19]

El 2 de julio de 2020, la señora **RODRÍGUEZ ROSARIO** presentó *Moción en Oposición a Solicitud de Desestimación*.[20] Puntualizó que: el **BPPR** había sido negligente en la tramitación del pleito, puesto que tardó siete (7) meses en contestar la *Demanda;* "si tenían buenos argumentos los debieron consignar dentro del término de treinta (30) días luego de conocer que se había incoado el pleito... [n]o obstante dejaron transcurrir el término de siete (7) meses lo que pone en indefensión a la parte demandante"; y no procedía la desestimación de la *Demanda*.[21] En la misma fecha, la señora **RODRÍGUEZ ROSARIO** presentó su *Reconsideración*.[22] En síntesis, expuso que no procedía la desestimación de su causa de acción, toda vez que, no era de aplicación el término de ciento veinte (120) días para emplazar a **VIVIENDA**, "ya que tanto **BPPR** como **VIVIENDA**, contestaron la demanda."[23] Nuevamente solicitó autorización para emplazar adecuadamente a **VIVIENDA**.

Inmediatamente, el 3 de julio de 2020, se determinaron dos (2) *Resoluciones*. En la primera, se declaró no ha lugar el ruego de desestimación presentada por el **BPPR**.[24] Sustancialmente resolvió que **VIVIENDA** no era una

---

[18] Apéndice de la *Petición de Certiorari*, págs. 144- 145.
[19] *Íd.*, pág. 158.
[20] *Íd.*, págs. 151- 157.
[21] *Íd.*, pág. 156.
[22] Apéndice de la *Petición de Certiorari*, págs. 159- 165.
[23] *Íd.*, pág. 164.
[24] *Íd.*, págs. 171- 172.

parte indispensable en el pleito. En la segunda, denegó extender el término de ciento veinte (120) días para emplazar a **VIVIENDA**.[25]

El 2 de octubre de 2020, la señora **RODRÍGUEZ ROSARIO** presentó *Moción Solicitando Enmienda a la Demanda para Incluir Parte Indispensable,* a los fines de añadir como parte indispensable al señor **MONTIJO RUIZ**.[26] En ese momento, presentó su *Demanda Enmendada.*[27] El 5 de octubre de 2020, se prescribió *Orden* autorizando la enmienda y para expedir el emplazamiento.[28] Subsiguientemente, el 7 de octubre de 2020, la señora **MONTIJO RUIZ** presentó su *Contestación a Demanda Enmendada y Otros Extremos.*[29] El 12 de octubre de 2020, el **BPPR** presentó su *Contestación a Demanda Enmendada.*[30] Acto seguido, el 22 de octubre de 2020, el señor **MONTIJO RUIZ** presentó *Moción* conteniendo su contestación a demanda enmendada y sus defensas afirmativas.[31]

El 27 de octubre de 2020, el foro primario formuló varias órdenes y citaciones dirigidas a **VIVIENDA** para la inspección y reproducción de todo documento que obrase en el expediente administrativo sobre la titularidad de la señora **RODRÍGUEZ ROSARIO**.[32] El 2 de noviembre de 2020, la señora **RODRÍGUEZ ROSARIO** presentó *Moción Informativa* en la cual aseveró que **VIVIENDA** había remitido por correo electrónico copia del expediente administrativo.[33]

Así las cosas, el 15 de enero de 2021, la señora **MONTIJO RUIZ** presentó *Moción Dispositiva,* en la cual arguyó que la realidad registral no estaba acorde con la realidad extra registral.[34]. Concertó que no había adquirido la titularidad total de la parcela número 40, y de conformidad con mensuras

---

[25] *Íd.,* pág. 173.
[26] *Íd.,* págs. 214- 215.
[27] Apéndice de la *Petición de Certiorari*, págs. 216- 219.
[28] *Íd.,* pág. 220.
[29] *Íd.,* págs. 221- 222.
[30] *Íd.,* págs. 228- 236
[31] Apéndice de la *Petición de Certiorari*, págs. 243- 245.
[32] *Íd.,* págs. 249- 257.
[33] *Íd.,* págs. 263- 264.
[34] *Íd.,* págs. 281- 286.

recientes, estipulaba la cabida de su propiedad en 982.1800 metros cuadrados, equivalentes a 0.24989 cuerdas; así como la cabida de la parcela 40-A en 343.0750 metros cuadrados, igual a 0.0873 cuerdas. Como corolario, abonó que **BPPR** no tenía garantía sobre la cabida total de la finca, sino sobre lo que ésta realmente había adquirido. La señora **MONTIJO RUIZ** respaldó que **BPPR** era un tercero registral protegido y tanto el **BPPR** como ella habían adquirido fundamentándose en datos inexactos del Registro de la Propiedad. Por ende, la señora **MONTIJO RUIZ** suplicó que se dictara sentencia en la cual se especificaran las cabidas de las parcelas número 40 y número 40-A. Exhortó, además, que se sugiriera a **VIVIENDA** llevar a cabo la división correspondiente para la rectificación de la cabida ante el Registro de la Propiedad.

El 21 de enero de 2021, la señora **RODRÍGUEZ ROSARIO** presentó *Moción en Reacción a Moción Dispositiva* uniéndose a la petitoria de la señora **MONTIJO RUIZ**.[35] Por su parte, el 16 de febrero de 2021, el **BPPR** presentó *Reacción en Torno a "Moción Dispositiva" y Solicitud de Remedios*.[36] Dilucidó que las señoras **RODRÍGUEZ ROSARIO** y **MONTIJO RUIZ** pretendían que por su "mera anuencia" se menoscabaran los derechos que había adquirido como tercero registral y no habían demostrado cumplimiento con la Ley del Registro de la Propiedad, en cuanto al proceso de segregación, e incluso, reconocieron que la parcela número 40 no había sido segregada por **VIVIENDA**. Amplió que las señoras **RODRÍGUEZ ROSARIO** y **MONTIJO RUIZ** procuraban que se declarara derecho a su favor, sin cumplir con los requisitos de estricto cumplimiento que exige la Ley del Registro de la Propiedad. El **BPPR** disputó, además, que desde que el banco antecesor otorgó el financiamiento, hasta la fecha de su escrito, la realidad registral de la parcela número 40 se había mantenido inalterada. Añadió lo siguiente:

> 37. Levitt Mortgage Corp., antecesor en derecho de BPPR, sin lugar a dudas, **ejerció a cabalidad toda la diligencia**

---

[35] Apéndice de la *Petición de Certiorari*, pág. 289.
[36] *Íd.*, págs. 303- 387.

**requerida y exigida al tercer adquirente de buena fe**, en el momento exacto en que se celebró el negocio jurídico de adquisición, que dio lugar a la inscripción. Así lo reflejan, entre otros, los estudios de título, "plot plan" y tasaciones, para la fecha del financiamiento, allá para el 19 de diciembre de 1995, lo cual también quedó evidenciado, mediante certificaciones registrales y estudios de título recientes. **Dicha presunción de buena fe, no ha sido rebatida en lo absoluto, por la demandante ni los demás codemandados, en el caso de epígrafe**.

38. Ciertamente, el Banco ha cumplido fielmente con los presupuestos que establece el Artículo 35 de la Ley de Registro, antes citados, habiendo adquirido de buena fe y a título oneroso, apoyado en la previa inscripción del transmitente, cuyo título constaba debidamente inscrito. . . (Citas Omitidas).[37]

Por lo tanto, el **BPPR** compelió que se declarara sin lugar el pedido de la señora **MONTIJO RUIZ** y en su lugar, se declarara que **BPPR** era un tercero protegido por la fe pública registral. En adición, reiteró la desestimación de la *Demanda Enmendada* en su contra.

El 23 de marzo de 2021, la señora **RODRÍGUEZ ROSARIO** presentó una *Moción en Oposición a Reacción en Torno a Moción Dispositiva y Solicitud de Remedios*.[38] Por medio de esta, y contrario al planteamiento de la señora **MONTIJO RUIZ**, al que previamente se había unido, resguardó que el **BPPR** no cumplía con el derecho vigente para ser un tercero registral y la compañía contratada por el **BPPR** para llevar a cabo el plano de mensura no lo realizó correctamente. En detalle, informó que el plano de mensura se utilizaba para corroborar que la información que surgía del Registro de la Propiedad concordaba con la realidad física del terreno; y de haberse llevado a cabo correctamente, el mismo hubiese arrojado la discrepancia existente. Así pues, apuntó que **BPPR** respondía por las actuaciones de la compañía que contrató para llevar a cabo el plano de mensura, al momento en que los señores **MONTIJO RUIZ** pidieron el préstamo hipotecario. Completó que la mensura incorrecta provocaba la nulidad del contrato de hipoteca, por lo que no procedía la defensa de tercero registral.

---

[37] Apéndice de la *Petición de Certiorari*, pág. 313.
[38] *Íd.,* págs. 388- 390.

Tiempo después, el 18 de mayo de 2021, la señora **MONTIJO RUIZ** presentó *Moción para que se Dicte Sentencia Parcial por las Alegaciones* en la cual reveló que se allanaba a que **BPPR** conservara su garantía hipotecaria intacta sobre las parcelas número 40 y 40-A, hasta que satisficiera la totalidad de la deuda.[39] En adición, expuso que el caso no estaba maduro para resolverse en los méritos, puesto que la reclamación de la señora **RODRÍGUEZ ROSARIO** ante **VIVIENDA** no había sido solucionada de manera final y firme, y ello impedía al Tribunal ejercer su función revisora de manera adecuada. Finalmente, exhortó que se dictara sentencia parcial por las alegaciones.

A posteriori, el 20 de mayo de 2021, la señora **RODRÍGUEZ ROSARIO** presentó *Solicitud de Dictar Sentencia por Estipulaciones* en la cual propuso estipular que en efecto **BPPR** era un tercero registral protegido, "y hasta que la garantía hipotecaria no se cumpla en la totalidad no se podrá rectificar la cabida de la co-demandada Magda Montijo Ruiz."[40] Dicho de otro manera, la señora **RODRÍGUEZ ROSARIO** se unió al argumento de la señora **MONTIJO RUIZ**, y también se allanó a que **BPPR** mantuviera su garantía hipotecaria intacta sobre las parcelas en cuestión, hasta que se satisficiera la totalidad de la deuda. Aludió, además, que no solicitaría daños, gastos, costas u honorarios de abogados a los codemandados.

El 24 de mayo de 2021, **BPPR** presentó *Moción en Cumplimiento de Orden y en Solicitud de Sentencia Desestimatoria*.[41] En dicho escrito, **BPPR** insistió en que no podía allanarse a la súplica de las señoras **RODRÍGUEZ ROSARIO** y **MONTIJO RUIZ**, puesto que no se ajustaban al derecho aplicable y menoscababan su derecho hipotecario, atentando contra su protección de tercero registral. Así pues, **BPPR** reiteró que se le declarara como un tercero registral, así como la desestimación de la *Demanda Enmendada* en su contra.

---

[39] *Íd.*, págs. 400- 403.
[40] Apéndice de la *Petición de Certiorari*, págs. 408- 412.
[41] *Íd.*, págs. 413- 415.

Ulteriormente, el 27 de abril de 2023, el foro apelado pronunció *Orden* requiriéndole a la señora **RODRÍGUEZ ROSARIO** presentar mediante el Sistema Unificado de Manejo y Administración de Casos (SUMAC) copia del expediente administrativo de **VIVIENDA**, "[c]on el fin de evaluar adecuadamente las mociones dispositivas presentadas."[42] Por este motivo, el 18 de mayo de 2023, la señora **RODRÍGUEZ ROSARIO** presentó *Moción en Cumplimiento de Orden* acompañada de copia del aludido expediente.[43]

Subsecuente, el 5 de octubre de 2023, se decidió la *Resolución y Orden* recurrida. En dicho documento, se consignó como hechos incontrovertidos los siguientes:

1. La parte demandante, Myriam Milagros Rodríguez Rosario, contrajo matrimonio con Juan Rivera Marrero el 20 de julio de 1974.
2. Durante su matrimonio, la parte demandante y Juan Rivera Marrero adquirieron mediante contrato privado, una estructura destinada a vivienda ubicada en el Barrio Sabana Hoyos de Vega Alta.
3. El Sr. Pedro Martínez Olmo suscribió el contrato de compraventa privado como parte vendedora de la casa sita en el Barrio Sabana Hoyos de Vega Alta.
4. La vivienda adquirida por la parte demandante y su entonces esposo estaba enclavada sobre terrenos pertenecientes al Departamento de la Vivienda.
5. El 1 de julio de 1975, el Departamento de la Vivienda segregó la parcela 40 ubicada en el Barrio Sabana Hoyos.
6. El Sr. José H. Grau, Secretario del Departamento de la Vivienda, otorgó una *Certificación*. Según la misma, el Estado Libre Asociado era dueño de un inmueble con una cabida de 463,158.1613 metros cuadrados, inscrita al folio ciento noventa y tres (193) del tomo setenta y ocho (78) de Vega Alta, finca número cinco mil sesenta y seis (5,066), inscripción primera.
7. Mediante la *Certificación*, el ELA segregó la finca descrita para formar una separada con la siguiente descripción:
   RÚSTICA: Solar marcado con el número cuarenta en el plano de parcelación de la comunidad rural Sabana Hoyos del barrio Sabana del término municipal de Vega Alta con una cabida superficial de cero cuerdas con tres mil quinientos cincuenta y siete diezmilésimas de otra, equivalente a mil trescientos noventa y ocho punto trece metros cuadrados...
8. En la *Certificación*, el ELA transmitió la finca segregada a la compradora, Doña Julia M. Gallardo Martínez por el precio de $1.00.
9. Al momento de perfeccionarse la segregación, en la parcela 40 había dos estructuras dedicadas a vivienda. Una de ellas pertenecía a Myriam Milagros Rodríguez Rosario, Juan Rivera

---

[42] *Íd.*, págs. 437- 438.
[43] *Íd.*, págs. 442- 517.

Marrero y la Sociedad Legal de Bienes Gananciales compuesta por ambos.

10. En la *Certificación* otorgada por el Departamento de la Vivienda no hay constancia de la existencia de las dos estructuras de vivienda y algún signo divisorio dentro de la parcela 40.

11. El 6 de abril de 1984, el Tribunal de Primera Instancia emitió una Sentencia de divorcio en el caso civil número CS84-78, mediante la cual quedó disuelto el vínculo matrimonial entre Myriam Milagros Rodríguez Rosario y Juan Rivera Marrero.

12. Como parte de las estipulaciones realizadas por Myriam Milagros Rodríguez Rosario y Juan Rivera Marrero en los procedimientos de divorcio, Juan Rivera Marrero cedió su parte de la residencia ganancial ubicada en el Barrio Sabana Hoyos de Vega Alta, Puerto Rico[,] para que Myriam Milagros Rodríguez Rosario la poseyera y adquiriera en concepto de dueña.

13. El 15 de diciembre de 1989, Julia M. Gallardo Martínez vendió la propiedad inmueble a Magda Esther Ruiz D'Andrade mediante escritura de Compraventa, con número 35, otorgada ante el notario Blas R. Ferraiuoli Martínez.

14. El 19 de diciembre de 1995, Magda Esther Ruiz D'Andrade vendió a Magda Esther Montijo Ruiz y Gabriel Montijo Ruiz la finca número 5,204 inscrita al folio 216 del tomo 80 de Vega Alta mediante la Escritura de Compraventa, con número 789, otorgada ante el notario Luis Rodríguez Bigas.

15. El 19 de diciembre de 1995, Magda Esther Montijo Ruiz y Gabriel Montijo Ruiz suscribieron un pagaré hipotecario mediante el cual se comprometieron al pago de $58,790.00 a cambio de un préstamo recibido del acreedor hipotecario, Levitt Mortgage Corp.

16. El pagaré fue garantizado mediante Escritura de Primera Hipoteca Núm. 790, otorgada ante el notario Luis Rodríguez Bigas el 19 de diciembre de 1995. El gravamen hipotecario se constituyó sobre la finca número 5,204, con cabida de 1,398.13 metros cuadrados, inscrita al folio número 216 del tomo 80 de Vega Alta, en el Registro de la Propiedad. Según la escritura de Primera Hipoteca, el inmueble gravado contenía una casa dedicada a vivienda.

17. Como parte del proceso de financiamiento, el acreedor hipotecario predecesor de la parte codemandada, Banco Popular de Puerto Rico, Levitt Mortgage Corp., contrató al ingeniero José F. Santana Fred para que realizara un estudio de mensura sobre la propiedad sita en el Barrio Sabana Hoyos.

18. El 15 de noviembre de 1995, el ingeniero Santana Fred certificó haber preparado el estudio de mensura basado en una examinación legal y una inspección de campo de la propiedad.

19. El Estudio de Mensura realizado por el ingeniero Santana Fred no reflejó que hubiera dos estructuras residenciales ni un muro de cemento que dividiera la parcela 40 sita en Sabana Hoyos.

20. Según el Estudio de Mensura, la parcela 40 tenía una cabida de 1,398.13 metros cuadrados.

21. El 12 de agosto de 2004, el Registrador de la Propiedad expidió una Certificación sobre la finca número 5,204 inscrita al folio 216 del tomo 80 de Vega Alta a instancia de la Sra. Magda E. Montijo Ruiz. De la misma no se desprende constancia en cuanto a la existencia de dos estructuras dedicadas a vivienda o muro divisorio dentro de la parcela 40.

22. El 4 de enero de 2019, el codemandado, Gabriel Montijo Ruiz vendió su participación sobre el inmueble sito en el Barrio

Sabana Hoyos a la codemandada, Magda Esther Montijo Ruiz mediante la Escritura de Compraventa núm. 2, otorgada ante la notaria Delia Cabán Dávila.

23. El 28 de mayo de 2020, el Registrador de la Propiedad emitió una Certificación de la Propiedad inmueble y esta no reflejó gravamen alguno a favor de la demandante, ni cambios en el estado registral de la propiedad sita en el Barrio Sabana Hoyos.

24. En el expediente de la parcela 40 del Departamento de la Vivienda consta un documento intitulado *Memorando*, con fecha de 7 de julio de 1988, dirigido a la Sra. Idalia Negrón, jefa de la Sección de Adjudicación de Solares enviado por el Sr. Raúl Miranda Osorio, Supervisor Local, en el cual se describe que dentro de la parcela adjudicada a la Sra. Julia Gallardo Martínez existía una vivienda de hormigón adicional perteneciente a la Sra. Myriam Milagros Rodríguez Rosario.

25. En el expediente de la parcela 40 del Departamento de la Vivienda consta un documento intitulado *Estudio de Título* con fecha de 9 de septiembre de 2022, en el cual el Sr. Carlos A. Ortiz Vera, Investigador de Títulos del Departamento de la Vivienda, certifica que de las notas marginales de los libros del Registro de la Propiedad no consta que la parcela 40-A haya sido segregada ni inscrita a favor de persona alguna.

26. En el expediente de la parcela 40 del Departamento de la Vivienda consta un documento intitulado *Solicitud de opinión legal solar 40 Com. Sabana Hoyos, Vega Alta*, dirigido al Secretario Auxiliar de la División [L]egal y a la Directora Regional del Departamento de la Vivienda en el cual se solicita recomendación legal en cuanto al error cometido por el Departamento de Vivienda al otorgar el título de la parcela, sin haber legalizado la estructura de vivienda de Myriam Rodríguez Rosario.

27. En el expediente de la parcela 40 del Departamento de la Vivienda consta un documento intitulado *Parcela 40 Comunidad Sabana Hoyos de Vega Alta* con fecha de 4 de diciembre de 2013 en el cual la Secretaría Auxiliar para Asuntos Legales y la División de Notaría le comunican a la Directora Interina de Desarrollo Comunitario y al Secretario Auxiliar para Asuntos Legales que, según los documentos entregados a la División de Asuntos Legales, el 1 de julio de 1975, se le otorgó un título de propiedad por la parcela 40, ubicada en la Comunidad Sabana Hoyos a la señora Julia Gallardo Martínez, sin tomar en consideración que dentro de la parcela existía otra estructura perteneciente a Pedro Martínez Olmo, que posteriormente había sido vendida a Myriam Milagros Rodríguez Rosario. Según el documento, para emitir una opinión legal sobre la solicitud de título realizada por Myriam Milagros Rodríguez Rosario, la División de Asuntos Legales le había solicitado a la Oficina Regional de Bayamón el expediente de la parcela 40, así como un informe actualizado del caso.

28. En el expediente de la parcela 40 del Departamento de la Vivienda consta una certificación emitida el 24 de abril de 1998 por la Autoridad de Acueductos y Alcantarillados de donde surge que Juan Rivera Marrero había tenido servicios de agua registrados a su nombre en el Barrio Sabana Hoyos, Sector Vietnam, Parcela #40, Vega Alta, desde el 3 de mayo de 1976 al 26 de febrero de 1991, bajo el número de cuenta 2100804176001.

29. En el expediente de la parcela 40 del Departamento de la Vivienda consta una certificación emitida el 24 de abril de 1998 por la Autoridad de Acueductos y Alcantarillados de

donde surge que Myriam Milagros Rodríguez Rosario había tenido servicios de agua registrados a su nombre en el Barrio Sabana Hoyos, Sector Vietnam, Parcela #40, Vega Alta, desde el 18 de abril de 1991, bajo el número de cuenta 10898198-002-3.

30. Del expediente no surge que el Departamento de la Vivienda haya emitido una determinación en cuanto a la solicitud de título presentada por la parte demandante, Myriam Milagros [Rodríguez] Rosario.

31. Según la *Moción Conjunta* sometida ante el Tribunal, Myriam Milagros Rodríguez Rosario y Magda Montijo Ruiz reconocen ser vecinas colindantes en el Barrio Sabana Hoyos, Vega Alta, desde el 19 de diciembre de 1995.

32. Según la *Moción Conjunta* sometida ante el Tribunal, existe un muro de bloques y cemento que divide la parcela 40 en dos predios.

33. Según la *Moción Conjunta* sometida ante el Tribunal, para el año 1975, existía una verja donde hoy se encuentra el muro.[44]

En concordancia, adjudicó que el **BPPR** "no cumplió con los requisitos establecidos por el Art. 35 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, 30 LPRA sec. 6050, y la jurisprudencia aplicable para ostentar la protección de la fe pública registral."[45] Precisó que la mensura realizada era un "medio racional por el cual el acreedor hipotecario debió haber conocido las inexactitudes existentes entre las constancias del Registro de la Propiedad y la realidad extrarregistral".[46] A esos efectos, opinó que el estudio de mensura no fue realizado adecuadamente y dicho error constituía una falta del requisito de diligencia impuesto por nuestro ordenamiento jurídico. Consiguientemente, declaró no ha lugar la *Reacción en Torno a "Moción Dispositiva" y Solicitud de Remedios* presentada el 16 de febrero de 2021 por el **BPPR**. Así como, declaró no ha lugar la *Moción para que se Dicte Sentencia Parcial por las Alegaciones*, presentada el 18 de mayo de 2021 por la señora **MONTIJO RUIZ**, y la *Solicitud de Dictar Sentencia por Estipulaciones* presentada el 20 de mayo de 2021 por la señora **RODRÍGUEZ ROSARIO**.

Precisa señalar que, en su *Resolución y Orden*, delegó en **VIVIENDA** emitir "su determinación en cuanto a los méritos de la reclamación de la

---

[44] Apéndice de la *Petición de Certiorari*, págs.544- 549.
[45] Apéndice de la *Petición de Certiorari*, págs. 552- 553.
[46] *Íd*., pág. 553.

[señora **RODRÍGUEZ ROSARIO**] y la posible segregación de la parcela 40"[47], y le ordenó pronunciar su determinación final sobre la interpelación de título dentro de un término no mayor de ciento veinte (120) días, ello aun cuando **VIVIENDA** no era parte del pleito.

En desacuerdo, el 20 de octubre de 2023, el **BPPR** presentó *Solicitud de Reconsideración de Resolución y Orden*.[48] El 1 de noviembre de 2023, la señora **RODRÍGUEZ ROSARIO** presentó *Moción en Oposición a Solicitud de Reconsideración de Resolución y Orden* argumentando que "el BPPR no fue diligente al otorgar un préstamo hipotecario basado en una mensura amañada, preparada sin la mínima diligencia."[49] Ese mismo día, se intimó *Resolución* declarando no ha lugar la referida reconsideración.[50] El 2 de noviembre de 2023, **BPPR** presentó *Solicitud de Término para Replicar a Oposición.*[51]

Insatisfecho con ese proceder, el 4 de diciembre de 2023, el **BPPR** acudió ante este foro intermedio revisor señalando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia al denegar la moción de desestimación de BPPR, interpretando erróneamente y sin prueba en contrario, la doctrina aplicable sobre la figura del tercero registral.
>
> Erró el Honorable Tribunal de Primera Instancia al adjudicar a *priori* y en sus méritos, el alcance del derecho hipotecario de BPPR, cuando la parte demandante carece de una reclamación que justifique la concesión de un remedio, pues, no tiene un título válido que le otorgue legitimación activa y, por ende, no existe un caso o controversia justiciable.

El 11 de diciembre de 2023, pronunciamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de diez (10) días a las señoras **RODRÍGUEZ ROSARIO** y **MONTIJO RUIZ** para mostrar causa por la cual no debíamos expedir

---

[47] *Íd.*, pág. 554.
[48] *Íd.,* págs. 556- 570.
[49] Apéndice de la *Petición de Certiorari*, págs. 572- 577.
[50] La notificación y archivo en autos fue el 3 de noviembre de 2023. Véase Apéndice de la *Petición de Certiorari*, págs. 580- 581.
[51] *Íd.*, págs. 578- 579.

el auto de *certiorari* y revocar el dictamen impugnado. El 20 de diciembre de 2023, la señora **RODRÍGUEZ ROSARIO** presentó su *Alegato de la Parte Apelada*.

En días recientes, el 15 de abril de 2025, el **BPPR** presentó su *Solicitud de Desestimación* aduciendo que el 8 de abril de 2025, la señora **RODRÍGUEZ ROSARIO** presentó *Moción en Solicitud de Archivo Sin Perjuicio;* y como resultado el 10 de abril de 2025, el foro recurrido promulgó *Sentencia* archivando el caso, sin perjuicio, sin especial imposición de costas, gastos, ni honorarios de abogado.

- II -

La Regla 83 (A) de nuestro Reglamento conviene, en lo pertinente, que "*[l]a parte promovente de un recurso podrá presentar en cualquier momento un aviso de desistimiento*".[52]

En conformidad con la Regla 83 (A) del Reglamento del Tribunal de Apelaciones, se declara ha lugar la *Solicitud de Desestimación* presentada el 15 de abril de 2025 por el **BPPR**, se da por ***desistida*** la *Petición de Certiorari* encausada el 4 de diciembre de 2023 por el **BPPR**; y ordenamos el cierre y archivo del presente caso.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Las Juezas Lebrón Nieves y Santiago Calderón concurren con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[52] 4 LPRA Ap. XXII-B, R. 83 (A).